# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION ) <br> ) <br> OF ) <br> ) <br> JESUS GUARDADO FIGUEROA, ) <br> ) <br> ) <br> ) <br> ) | Case No. 12-M-269 <br><br> Magistrate Judge <br> Michael T. Mason |

## AMENDED MEMORANDUM OPINION AND ORDER GRANTING REQUEST FOR EXTRADITION

The Government of Mexico ("Mexico") has requested the extradition of Jesus Guardado Figueroa ("Figueroa") pursuant to the Extradition Treaty between the United States of America and Mexico, dated May 4, 1978, 31 U.S.T. 5059, TIAS 9656 (the "Treaty"). According to that request, Figueroa is wanted by Mexico for the crime of aggravated homicide, as defined in Article 302, in relation to Article 303(I) and punishable under Article 320, in relation to Articles 315 and 318 of the Mexican Federal Penal Code. The United States ("the government"), acting on Mexico's behalf, contends that the totality of evidence before this Court establishes probable cause to believe that Figueroa committed the alleged offense. Figueroa contests his extradition on probable cause grounds.

This Court has carefully considered the relevant Treaty provisions, the exhibits submitted by Mexico in support of the extradition request, the parties' written submissions of the government and Figueroa [7, 23, 24, 27], and the arguments made by counsel during the extradition hearing. For the reasons set forth below, we find that there is competent evidence to sustain a finding of probable cause as to the charge of

aggravated homicide, and Figueroa should be extradited to Mexico in accordance with the Treaty. Figueroa is committed to the custody of the United States Marshall pending final disposition of this matter by the Secretary of State.

I.  **BACKGROUND**

Figueroa is wanted in Mexico for aggravated homicide in connection with the death of Castulo Gil Villalvazo ("Villalvazo"). Villalvazo was murdered by two unknown men on a soccer field in Zapopan, Jalisco in Mexico on October 28, 2008. Mexico believes that Figueroa hired the gunmen to kill Villalvazo. An arrest warrant for Figueroa was issued by the State of Jalisco on February 26, 2010. On July 17, 2011, Mexico filed a diplomatic note formally requesting the extradition of Figueroa, which prompted the government to file a Complaint for Extradition on May 11, 2012. On that date, this Court issued a warrant for Figueroa's arrest, and he was subsequently arrested on May 16, 2012. An attorney was appointed to represent him, and since that time, he has been detained at the Metropolitan Correctional Center (the "MCC") in Chicago.

On June 6, 2012, the government, acting on Mexico's behalf, filed a memorandum in support of the extradition of Figueroa. Figueroa's counsel requested a number of months to prepare for the extradition hearing, which was ultimately held on April 12, 2013. The purpose of the hearing was to allow this Court to determine whether the evidence of criminality presented by Mexico is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. Shortly after the hearing, the parties filed their post-hearing briefs.

## II. LEGAL STANDARD

The process of extraditing a fugitive from the United States to Mexico is governed by the provisions of the federal extradition statute, 18 U.S.C. §§ 3181 *et seq.*, and the Treaty between the United Status and Mexico, 31 U.S.T. 5059. Under Article 1 of the Treaty, the United States and Mexico have mutually agreed to extradite fugitives who are charged with crimes in one country and subsequently found within the territory of the other. 31 U.S.T. 5059. Under Article 11 of the Treaty, once a foreign fugitive is found within the territory of the United States, Mexico may then request the provisional arrest of the fugitive through diplomatic channels. *Id.* The request must contain "a description of the person sought, a description of his alleged crimes, a declaration of the existence of a warrant for his arrest, and an undertaking to submit a formal request for extradition." *In re Extradition of Rodriguez Ortiz*, 444 F. Supp. 2d 876, 880 (N.D. Ill. 2006) (*citing* the Treaty, Article 11). If a formal request for extradition and the required supporting documents are not filed within sixty days of the apprehension of the fugitive, the provisional arrest must be terminated. *Id.* In addition, 18 U.S.C. § 3184 authorizes a judicial officer to issue a warrant for the arrest for any fugitive whose extradition is requested, upon a sworn complaint charging the fugitive with committing an extraditable offense.

The second stage in the extradition process is the submission of a formal request for extradition. Article 10 of the Treaty lists the required contents of a formal request for extradition, and requires that it be submitted through the appropriate diplomatic channels. In addition to the formal request, supplemental documents must

3

be provided. Where a fugitive has not yet been convicted, the required documents include: 1) a certified copy of the warrant for the fugitive's arrest issued by a judge of the requesting party; and 2) "[e]vidence which, in accordance with the laws of the requested [p]arty, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there." (Treaty, Article 10.) Article 10 further directs that these documents shall be received into evidence if they are certified by the principal consular officer of the United States in Mexico. The federal extradition statute similarly provides that documentary evidence proffered by a foreign government requesting extradition will be admissible if it is certified to be properly authenticated by the principal consular officer of the United States in the requesting country. 18 U.S.C. § 3190. *See also In re Assarsson*, 635 F.2d 1237, 1245-46 (7th Cir. 1980).

In order to determine whether extradition is appropriate, the authority of a magistrate judge serving as an extradition judicial officer "is limited to determining an individual's eligibility to be extradited, which is done by ascertaining (1) whether the crime is an extraditable offense under the subject treaty, and (2) whether probable cause exists to sustain the charge." *In re Extradition of Sainez*, 07-MJ-0177, 2008 WL 366135, at *3 (S.D. Cal. Feb. 8, 2008) (citation omitted); *see also* 18 U.S.C. § 3184 (providing for extradition "[i]f, on such hearing, [the court] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention."). If the magistrate judge determines that the charged offenses are within the treaty's terms and probable cause exists, he is to certify the matter to the Secretary of State, who has sole discretion to determine if the extradition should proceed. *In re Extradition of Mazur*, No. 06 M 295, 2007 WL 2122401, at *1 (N.D. Ill. July 20, 2007) (*citing Eain v. Wilkes*, 641

4

F.2d 504, 508 (7th Cir. 1981)).

## III. ANALYSIS

Extradition is appropriate where the Court makes the following findings: 1) the judicial officer has jurisdiction to conduct an extradition proceeding; 2) the Court has jurisdiction over the fugitive; 3) the person before the Court is the fugitive named in the request for extradition; 4) there is an extradition treaty in full force and effect; 5) the crimes for which surrender is requested are covered by that treaty; and 6) there is competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought. *In re Extradition of Garcia*, 188 F. Supp. 2d 921, 925 (N.D. Ill. 2002) (*citing Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542 (1925)). Figueroa stated at the extradition hearing, as well as in his supplemental filing, that he does not dispute that the first five requirements are satisfied here. In other words, Figueroa contests his extradition only on the basis of probable cause. Nevertheless, we will briefly discuss the first five requirements to ensure that they are properly satisfied before moving on to the issue of whether there is sufficient evidence to find probable cause that Figueroa committed the crime for which he is wanted by Mexico.

### A. Authority of the Judicial Officer

The extradition statute authorizes a broad class of judicial officers to hear extradition cases, and federal magistrate judges are expressly authorized to hear and decide extradition requests if "authorized . . . by a court of the United States." 18 U.S.C. § 3184; *see also Austin v. Healey*, 5 F.3d 598, 601-02 (2nd Cir. 1993) (rejecting

a challenge to magistrate judge's authority to conduct an extradition hearing without specific delegation of authority for that particular case). In addition, "the jurisdiction of federal magistrate judges has been upheld as being consistent with Article III of the Constitution." *In re Rodriguez Ortiz,* 444 F. Supp. 2d at 882. Figueroa does not contest this Court's jurisdiction, and this Court finds that it has the requisite subject matter jurisdiction over this extradition proceeding.

### B. Jurisdiction Over the Fugitive

The extradition statute provides that this Court has jurisdiction over any person "found within [t]his jurisdiction." 18 U.S.C. § 3184. Figueroa was arrested within the jurisdiction of the Northern District of Illinois. Moreover, Figueroa does not dispute this Court's jurisdiction over him. Accordingly, this Court has the requisite personal jurisdiction to determine the extraditability of Figueroa. *See In re Rodriquez Ortiz,* 444 F. Supp. 2d at 882.

### C. Identity of the Fugitive

Figueroa has waived the right to an identity hearing and he does not dispute that he is the individual sought by Mexico. In addition, Mexico has provided a photograph of Figueroa, which establishes that Figueroa is the individual for which they are seeking extradition. Therefore, we find that this requirement for extradition has been satisfied.

### D. Existence of an Extradition Treaty

Extradition is proper where there is a treaty or convention for extradition in force between the requesting country and the United States. 18 U.S.C. §§ 3181, 3184; *see also In re Extradition of Kam-Shu,* 477 F.2d 333, 339 n. 9 (5th Cir. 1973) ("Extradition

treaties should be construed liberally, but absent a treaty or specific authority in a treaty the United States generally will not extradite a fugitive.") (quotation omitted). The United States has submitted a declaration from Alexis R. Blane, an Attorney Advisor in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and Mexico. Figueroa does not contest the validity or application of the Treaty, and the Court finds that there is a valid extradition treaty in full force and effect between the United States and Mexico.

### E. Crimes Covered by the Treaty

Next, we must determine whether the charged offense provides a basis for the extradition. Article 2 of the Treaty allows for extradition "for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year." 31 U.S.T. 5059. Article 2, paragraph 4(a) of the Treaty provides that extradition shall take place for the attempt to commit an offense, the conspiracy to commit an offense, or the participation in the execution of the offense. *Id.*

Here, Mexico requests extradition for aggravated homicide, in violation of Article 302, in relation to Article 303(I), and punishable under Article 320, of the Mexican Federal Penal Code. This charge is considered a crime in both the United States (under state or federal law) and Mexico, and the Treaty with Mexico expressly provides that murder is an extraditable offense. In addition, this offense is punishable under the laws of both Mexico and the United States by imprisonment for a period of more than one year and it is covered under Article 2 of the Treaty. Therefore, we find that the

charged offense is extraditable.

### F. Probable Cause

Because the first five requirements for extradition are satisfied, the only remaining issue is whether there is competent legal evidence to support a finding of probable cause as to the charge of aggravated homicide. Figueroa argues that extradition should be denied because probable cause cannot be established in this case. He asserts that the evidence that Mexico submitted is "replete with inconsistencies" and "substantial doubts about the reliability of witnesses," and he urges this Court to find that extradition is not appropriate here.

#### 1. Standard for Determining the Sufficiency of Evidence

Before we address the evidence that Mexico has provided, we note at the outset that the hearing contemplated under the federal extradition statute is not a trial on the merits of the charges, but is more in the nature of a preliminary hearing. *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993). This Court is not required to determine whether Figueroa is guilty "but merely whether there [i]s competent legal evidence which would justify his apprehension and commitment for trial if the crime had been committed in Illinois." *In re Rodriguez Ortiz*, 444 F. Supp. 2d at 884 (*citing Collins v. Loisel*, 259 U.S. 309, 314-315, 42 S.Ct. 469, 66 L.Ed. 956 (1922)); *see also Gill v. Imundi*, 747 F. Supp. 1028, 1038 (S.D.N.Y. 1990) ("[T]he hearing before the extradition magistrate does not determine the guilt or innocence of the accused but rather represents a judgment of whether there is competent evidence that would support a reasonable belief that the subject of the proceedings was guilty of the crimes charged.")

(quotations omitted). In other words, competent evidence for purposes of an extradition proceeding "is not necessarily evidence competent to convict." *Esposito v. Adams*, 700 F. Supp. 1470, 1476 (N.D. Ill. 1988) (quotations omitted). Rather, probable cause will be found where there is evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *In re Extradition of Kapoor*, No. 11-M-456, 2012 WL 1318925, at *4 (E.D.N.Y. Apr. 17, 2012) (*citing Lo Doca v. United States*, No. CV 95-713, 1995 WL 428636, at *12 (E.D.N.Y. July 07, 1995)).

The probable cause standard is a "flexible, practical common-sense one." *U.S. v. Hayes*, 236 F.3d 891, 894 (7th Cir. 2001). Accordingly, "[i]n making this determination, courts apply a 'totality of the circumstances analysis' and 'make a practical, common sense decision whether, given all the circumstances . . . there is a fair probability' that the defendant committed the crime." *In re Rodriguez Ortiz*, 444 F. Supp. 2d at 884 (*quoting In re Extradition of Okeke*, No. 96-7019P-01, 1996 WL 622213, at *5 (D.N.J. Sept. 5, 1996)). The Federal Rules of Evidence and the Federal Rules of Criminal Procedure do not apply to extradition proceedings. *Bovio*, 989 F.2d at 259 n. 3. Hearsay evidence may be considered and may form the basis for a finding of probable cause. *In re Extradition of Nolan*, 651 F. Supp. 2d 784, 795 (N.D. Ill. 2009). However, the evidence offered in support of extradition must be "competent and adequate." *Id.* (citing *Bingham v. Bradley*, 241 U.S. 511, 517, 36 S.Ct. 634, 637 (1916)). Thus, when "presented with evidence through affidavits, the court may conclude, on a review of the affidavits submitted that there are insufficient indicia of

reliability or credibility to establish probable cause." *In re Rodriguez Ortiz*, 444 F. Supp. 2d at 884 (quotations omitted). Similarly, when an extradition request consists of "mere conclusory allegations unsupported by substantive evidence, extradition will be denied." *Id.* (*citing United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1366 (S.D. Fla. July 30, 1999)).

In addition, a defendant's right to introduce evidence in an extradition proceeding is limited. *In re Rodriguez Ortiz*, 444 F. Supp. 2d at 884. He "is not entitled to contradict the demanding country's proof or pose questions of credibility, but is limited to offering evidence which explains or clarifies that proof." *In re Nolan*, 651 F. Supp. 2d at 794 (*citing In re Extradition of Guillen*, No 90 CR 1056, 1991 WL 149623, *8 (N.D.Ill. July 12, 1991)); *see also Esposito*, 700 F.Supp. at 1477 (declining to consider the credibility and motives of witnesses). Allowing the admission of explanatory evidence is intended to "afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." *In re Extradition of Ben-Dak*, No. 06 Mag. 1540, 2008 WL 1307816, *4 (S.D.N.Y. Apr. 11, 2008) (quotations omitted). However, the court must ensure that the extradition proceedings are not converted into a "dress rehearsal trial." *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2nd Cir. 1976), cert denied, 429 U.S. 833 (1976). For this reason, evidence attacking the credibility of a witness is not permissible, and any issues of credibility are to be resolved at trial. *In re Extradition of Mazur*, No. 06 M 295, 2007 WL 2122401, *19 (N.D. Ill. July 20, 2007) (citations omitted).

## 2. Summary of Evidence In Support of Probable Cause

Now that we have set forth the requisite standard in these proceedings, we turn to the evidence that is before this Court. It is undisputed that on October 28, 2008, on a soccer field in Zapopan, Jalisco in Mexico, Villalvazo was shot and killed by two unknown gunmen. The murder took place shortly after the conclusion of a soccer match, in which both Figueroa and Villalvazo were playing on separate teams. It is Mexico's position that Figueroa hired the two gunmen to murder Villalvazo. In support of that allegation, Mexico has provided this Court with the sworn statements of two individuals who claim to have knowledge of Figueroa's involvement, as well as the statements of other individuals who claim to have knowledge about the events on the date of the murder. Based on these statements, as well as other circumstantial evidence, the government urges us to find that there is the requisite probable cause to find that Figueroa should be extradited to Mexico.

The government relies primarily on the sworn statements of Damien Santana Reyes ("Reyes") and Miguel Rivera Gaytan ("Gaytan"), two individuals who were employed by Figeuroa. Both statements were made nearly 14 months after the murder, and both men provided an almost identical account of a meeting they witnessed between Figueroa and two unknown men about the murder of Villalvazo. Reyes gave the first of these statements on January 7, 2010. Reyes stated that he worked for Figueroa for four years as a messenger. He stated that approximately two months prior to the murder of Villalvazo, he traveled with Figueroa and Gaytan to a meeting with two other individuals at the Plaza Universidad. He stated that at this meeting, Figueroa

asked the other individuals to kill Villalvazo because he was romantically involved with Figueroa's wife, Karen Villalvazo Hernandez ("Karen"). According to Reyes, Figueroa told the other individuals that he would notify them when his soccer team was playing against Villalvazo's team so that they would know where they could find Villalvazo. Reyes stated that he waited until January of 2010 to come forward with his knowledge of Figueroa's involvement in the murder because Figueroa had threatened to kill him, and he feared for his safety.

One day later, on January 8, 2010, Gaytan provided the Mexican authorities with a sworn statement outlining an almost identical account of a meeting he witnessed with Figueroa. Gaytan stated that he worked as a driver for Figueroa for approximately three years. He stated that at one time he went with Figueroa to the Plaza Universidad to meet with some people about a "little job," namely, the murder of Villalvazo. According to Miguel, Figueroa stated that he wanted Villalvazo murdered because he was dating Figueroa's wife. Gaytan stated that Figueroa told these unknown individuals that he would let them know when and where Villalvazo would be playing soccer so that they could kill him there. Gaytan also stated that when they left the Plaza Universidad, Figueroa told both Gaytan and Reyes that he would kill them if they did not keep quiet, and that because he feared for his safety, he did not come forward to the authorities sooner.

Reyes and Gaytan also provided similar physical descriptions of the men they met at Plaza Universidad. This description matched some of the features that witnesses at the soccer field had reported about the assailants. Reyes described one individual as thin, approximately 1.80 meters tall, with light brown skin, short black hair,

a thick mustache, and approximately 30 years old. He described the other individual as thin, approximately 1.70 meters tall, with white skin, short brown hair and a short mustache. Gaytan stated that one of the individuals who met with Figueroa was thin, approximately 1.75 meters tall, with light brown skin, short black hair, and approximately 30 years old. He described the other individual as 1.70 meters tall, thin, with white skin, short light brown hair and a thin mustache. A witness at the soccer field, Hector Andres Villalvazo Hernandez ("Hernandez"), gave a sworn statement in which he described one of the shooters as thin, approximately 1.80 meters tall, with light brown skin, short black straight hair, a bushy black mustache, and approximately 30 years old. He described the other shooter as thin with a black mustache and between 30 to 35 years old.

Reyes and Gaytan also told authorities that they were at the soccer field on the night of October 28, 2008 when Villalvazo was shot and killed. They both stated that they were part of the soccer game, and that after the game, they, along with Figueroa and the rest of their team, headed towards their locker room. They stated that the opposing team went towards the bleachers on the other side of the field. Reyes and Gaytan both stated that they then heard gun shots from the other side of the field and they ran into the locker room. Shortly thereafter, they came out of the locker room and approached the area of the shooting, where they saw Villalvazo laying dead on the ground.

Mexico provided a number of other sworn statements in the documents in support of extradition. Hernandez, who provided authorities with a physical description of one of the shooters, was Karen's brother. He stated that when he returned home after witnessing the Villalvazo's murder, he told his sister to call Figueroa. Hernandez

13

stated that when he asked Figueroa what had happened, Figueroa replied, "Man that was really [expletive], I'm glad you left, our little soccer games are over, ha ha ha, I will call you later."

Marlene Martinez Zepeda ("Zepeda") provided a statement on October 28, 2008, in which she stated that she was at the soccer match on October 28, 2008. She also stated that she was sitting in the bleachers when she heard gunshots and saw Villalvazo fall backwards. She also witnessed two unknown men at the scene and she stated that she heard one of the men say "Come on,.. Let's go," and the other man replied, "Just let me make sure he's dead." Zepeda then heard additional gunshots, followed by the sound of tires squealing as the shooters fled.

### 3. Figueroa's Arguments and Sufficiency of the Evidence

Figueroa makes several arguments in support of his position that Mexico's evidence does not establish probable cause. First, Figueroa argues that extradition is improper in this case because the timing of the events in the extradition documents raises doubts about probable cause. He states that in the formal request for extradition, dated June 17, 2011, there is a reference to an October 15, 2009 petition for the provisional arrest of Figueroa. He argues that this reference indicates that Mexican authorities were targeting him long before Reyes and Gaytan made their statements in early 2010 implicating him in Villalvazo's murder. We do not agree with Figueroa that these dates defeat any finding of probable cause. Instead, we find that lending any significance to these dates as evidence of a corrupt investigation would be pure speculation, which this Court is not permitted to do at this stage in the proceeding.

Next, Figueroa argues that his wife Karen's sworn statement is evidence that Reyes and Gaytan's statements are not credible. In her statement, Karen told authorities that she and Figueroa were not married until two months after Villalvazo's murder. Karen's statement is corroborated by her brother's statement to authorities that Figueroa and Karen were married in December of 2008. Karen also stated that she and Figueroa were married in the United States, whereas Reyes and Gaytan stated that they were married in Puerto Vallarta. In addition, Karen and her brother told authorities that Villalvazo was their cousin and Karen denied that she was ever romantically involved with him. Based on these statements, Figueroa argues that Reyes and Gaytan's statements that he ordered Villalvazo's murder because of Villalvazo's relationship with his wife are unreliable and the purported motive for the murder is undermined.

We disagree with Figueroa that Karen's statements render Reyes and Gaytan unreliable. First, we reiterate that issues of credibility are beyond the scope of this proceeding. We also note that the fact that Figueroa and Karen may have been only dating, and not actually married, at the time of the murder does not render Reyes and Gaytan's statements false because they were in fact married at the time both men made their statements to the authorities. The date of the wedding also does not negate Figueroa's motive because if Villalvazo and Karen were romantically involved, he still may have ordered the murder, even if Karen was not yet his wife. In addition, the fact that Karen claims that she never had a relationship with Villalvazo is not enough for us to completely disregard the statements of Reyes and Gaytan. She may have other reasons for denying any relationship with Villalvazo, and again, at this stage, we will not

speculate or make credibility determinations.

Figueroa also points to a few other facts that he claims do not add up. For example, he refers to Karen's statement that Figueroa left Mexico for the United States in November of 2008 and never returned to Mexico because his life was in danger. Figueroa states that this fact is inconsistent with the statement of both Reyes and Gaytan that they continued to work for Figueroa until December of 2009. However, just because Figueroa was no longer in Mexico does not necessarily mean that Reyes and Gaytan were no longer working for him.

Figueroa also argues that Reyes' statement is unreliable because he made a second statement to authorities that is not consistent with the first statement. In the second statement, Reyes told authorities that he and Figueroa met with four or five others at the Plaza Universidad, and that he was sent back to the car when Figueroa realized he was listening to the conversation. Figueroa states that this contradicts Reyes's previous version of the events. He also argues that it is hard to believe that Figueroa would invite his employees to the alleged meeting, and then threaten to kill them because he did not trust them to keep quiet. Figueroa asserts that based on these inconsistencies or improbabilities, we cannot rely on the statements of Reyes and Gaytan in making a determination on probable cause.

Again, we disagree with Figueroa's arguments. Reyes' first and second statements are not necessarily inconsistent with one another; instead, we agree with the government that the second statement may include additional details that Reyes did not provide in his first statement. We also disagree with Figueroa's characterization of Reyes' statement as improbable because we can in fact imagine a scenario in which

16

Figueroa might threaten even his trusted employees if they do not keep the meeting about the murder to themselves.

Figueroa makes two final arguments in an attempt to discredit the statements of Reyes and Gaytan. He argues that the timing of Reyes and Gaytan's statements calls into question their veracity. He notes that Reyes and Gaytan made their statements one day apart, just a few weeks after they left the employment of Figueroa, and long after the death of Villalvazo. He notes that Gaytan admitted that he spoke to Reyes about the investigation just prior to giving his statement, and Figueroa argues that their statements seem to be *too* similar. Figueroa also argues that the identification documents Reyes and Gaytan provided at the time they made their statements may not be authentic, and therefore, the true identities of the only witnesses to implicate Figueroa may actually be unknown. Again, we find that Figueroa's arguments are based on pure speculation and are not enough to negate a finding of probable cause.

In sum, although we agree with Figueroa that the evidence that Mexico has provided is by no means perfect, the issue before us is not whether Figueroa should be convicted of the crime. As we have explained, the issue before the Court is only whether there is probable cause to believe that Figueroa committed the offense. *See, e.g., DeSilva v. DiLeonardi,* 125 F.3d 1110, 1112 (7th Cir. 1997) ("extradition depends on probable cause to believe that [the defendant] committed an offense covered by the extradition treaty."); *In re Rodriguez Ortiz*, 444 F. Supp. 2d at 884 ("this Court is not required to determine whether [the defendant] is guilty, but merely whether there was competent legal evidence [to] justify his apprehension and commitment for trial if the crime had been committed in Illinois."). Although there may be some inconsistencies in

the record, we do not believe that these are so compelling as to negate a finding of probable cause. See In re Sainez, 2008 WL 366135, at *18 (rejecting inconsistencies and conflicts as "not sufficient to negate the showing of probable cause."); see also In re Extradition of Gang-Choon Han, No 11-2059, 2012 WL 33201, at *7 (C.D. Cal. Jan. 6, 2012) ("An extradition magistrate does not weigh conflicting evidence and make factual determinations. The ultimate question of guilt or innocence is left to the country requesting extradition") (internal quotations omitted).

Therefore, contrary to Figueroa's arguments, we find that there is sufficient evidence before us to meet the probable cause standard on this charge. Mexico has provided us with the sworn statements of two individuals who can place Figueroa at a meeting with certain individuals requesting the murder of Villalvazo. These sworn statements are consistent with one another, and consistent with the events that occurred the night of the murder. According to Reyes and Gaytan, Figueroa told the unidentified men at the meeting that he would notify them when his team was playing Villalvazo's team. We agree with the government that there is probable cause to find that it was not mere coincidence that Villalvazo was killed the very day and at the same location that Figueroa played against Villalvazo's team. Mexico has also put forth some evidence as to a motive for Villalvazo's murder, namely that he was romantically involved with Karen, and as we explained above, Karen's statement that she was not in a relationship with Villalvazo or that she was not married at the time of the murder is not enough to discredit other compelling evidence.

This Court is not permitted "to simply hand over a United States citizen on the word of a prosecutor, coupled with conclusory allegations and unsubstantiated,

unreliable evidence." *In re Extradition of Mazur,* 2007 WL 2122401, at *27. However, in this case, after carefully considering the evidence submitted by Mexico, we conclude that this evidence is sufficient to "cause a person of ordinary prudence and caution to consciously entertain a reasonable belief" of Figueroa's guilt on the charge of aggravated homicide. *In re Nolan,* 651 F. Supp. 2d at 815. Therefore, we find that Figueroa should be extradited to Mexico to face aggravated homicide charges in connection with Villalvazo's death.

## IV. CONCLUSION

The Court would like to commend the attorneys for Figueroa and the government for their zealous representation in this proceeding. Based on the foregoing, this Court finds that Jesus Guardado Figueroa is extraditable for the offense of aggravated homicide and there is probable cause to certify this finding to the Untied States Secretary of State, as required under 18 U.S.C. §3184.

IT IS THEREFORE ORDERED that a certified copy of this Memorandum Opinion and Order and Certification of Extraditability, along with all formal extradition documents received into evidence, a certified copy of all testimony taken at the hearings, and a copy of all memoranda of law filed on the issue of extradition be delivered by the Clerk of the Court of the Northern District of Illinois to the Assistant United States Attorney for this District for transmission to the United States Secretary of State.

IT IS FURTHER ORDERED that Jesus Guardado Figueroa remain in the custody of the United States Marshal pending final disposition of this matter by the Secretary of State and the arrival of agents of the Government of Mexico for the

purpose of his extradition to Mexico to face trial on the charge of Aggravated Homicide.

**ENTERED:**

*[signature: Michael T. Mason]*

**MICHAEL T. MASON**

**United States Magistrate Judge**

**DATED: June 26, 2013**